**DUANE MORRIS** LLP
By:   Anthony J. Costantini
      Suzan Jo
      Kevin P. Potere
1540 Broadway
New York, NY 10036-4086
Telephone: +1 212 692 1000
Fax: +1 212 692 1020
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ATTESTOR MASTER VALUE FUND LP,

    Plaintiff,

v.

THE REPUBLIC OF ARGENTINA,

    Defendant.

14 Civ. 5849 (TPG)

---

### STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Rule 56.1 of the Rules of this Court, plaintiff Attestor Master Value Fund LP ("Attestor" or "Plaintiff") submits the following Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment.

1.  As set forth in Paragraphs 8-20 of the First Amended Complaint dated August 19, 2014, Plaintiff owns bonds issued by Argentina pursuant to the 1994 Fiscal Agency Agreement ("1994 FAA"). Costantini Decl. ¶ 4.[1]

---

[1] The "Costantini Decl." referenced herein means the accompanying Declaration of Anthony J. Costantini dated March 2, 2015.

2. The 1994 FAA provides that Argentina consents to the personal jurisdiction of this Court. Cohen Decl. Ex. 1 ¶ 22.[2]

3. The 1994 FAA provides that Argentina consents to service of process by service on its agent, Banco de la Nación Argentina, in New York City. Cohen Decl. Ex. 1 ¶ 22.

4. The 1994 FAA provides that Argentina waives sovereign immunity to the fullest extent permitted by law. Cohen Decl. Ex. 1 ¶ 23.

5. The 1994 FAA provides that Argentina agrees that the 1994 FAA would be governed by and construed in accordance with the laws of the State of New York. Cohen Decl. Ex. 1 ¶ 23.

6. Paragraph 1(c) of the 1994 FAA provides:

> The Securities will constitute (except as provided in Section 11 below) direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves. The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).

Cohen Decl. Ex. 1 ¶ 1(c).

7. As of December 2001, Argentina defaulted on the bonds issued pursuant to the 1994 FAA. Cohen Decl. Ex. 3 (Law 25,561); Answer ¶ 55, 58.

8. Each year since Argentina's default, Argentina has included in its annual budget a moratorium on payments to holders of unrestructured debt that was issued prior to December 11,

---

[2] The "Cohen Decl." referenced herein means the Declaration of Robert A. Cohen, dated February 3, 2015, and all attached exhibits, filed in *NML Capital, Ltd. v. Republic of Argentina*, 14 Civ. 8601 (TPG) (D.E. # 9), which is incorporated by reference in this Motion.

2001. Cohen Decl. Ex. 4 (*Claren Corp. c/ E.N.*, C. 462, XLVII (Mar. 6, 2014); Law 25,565; Law 25,725; Law 26,728; Law 26,784, Law 26,895; Law 27,008; Decree No. 2053/2010; Decree No. 2054/2010.

9. In 2005, Argentina offered bondholders who owned bonds issued under the 1994 FAA an "exchange offer" in which they were given the option to exchange their defaulted bonds for a new debt issue (the "2005 Exchange Bonds") worth approximately 25–29% of the defaulted bonds. Cohen Decl. Ex. 5 (2010 exchange prospectus); Ex. 32 (8/26/2014 Bloomberg).

10. The terms of the 2005 Exchange Bonds included a "RUFO clause," which purports to give participants in the 2005 exchange special rights in the event that Argentina offers another exchange at a later date. Cohen Decl. Ex. 7 (2005 exchange prospectus supplement).

11. In 2005, Argentina enacted Law 26,017 (the "Lock Law"). Cohen Decl. Ex. 6 (Lock Law).

12. The Lock Law prohibited Argentina's Executive Branch from reopening the debt exchange after it closed and from reaching any settlement involving untendered securities that had been eligible for the exchange. Cohen Decl. Ex. 6.

13. Article 2 of the Lock Law provides that Argentina may not reopen the debt exchange. *Id.*

14. Article 3 of the Lock Law provides that bonds eligible for the 2005 exchange, but not tendered, would be subject to the following provision: "The national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds referred to in Article 1 of this law." *Id.*

DM1\5404022.1

15. Article 4 of the Lock Law provides that "The national Executive Power must—within the framework of the terms of issuance of the respective bonds, and the applicable laws and regulations in the corresponding jurisdictions—order the pertinent administrative acts and fulfill the necessary procedures to remove the bonds referred to in the preceding article from listing on all domestic and foreign securities markets and exchanges." *Id.*

16. Bonds representing approximately 76% of Argentina's external debt under the 1994 FAA were tendered in the 2005 exchange. Cohen Decl. Ex. 5, at xiv.

17. Argentina made all payments due under the 2005 Exchange Bonds until June 30, 2014, and has purported to make payments since then. Cohen Decl. Ex. 26 (8/6/2014 Order).

18. In 2009, Argentina enacted Law 26,547, which temporarily suspended the Lock Law to permit Argentina to conduct another exchange in 2010. Cohen Decl. Ex. 10 (Law 26,547).

19. Law 26,547 prohibited Argentina from offering terms and conditions "equal to or better than those offered" in the 2005 Exchange and prohibited Argentina from offering "holders of public debt that have brought judicial, administrative, or arbitration proceedings or any other type of proceeding treatment more favorable than the treatment afforded to holders who did not bring such proceedings." *Id.*, at arts. 3 & 5.

20. In 2010, Argentina offered bondholders who owned bonds issued under the 1994 FAA an "exchange offer" in which they were given the option to exchange their defaulted bonds for a new debt issue (the "2010 Exchange Bonds"). Cohen Decl. Ex. 5.

21. The 2010 exchange offer was completed on September 27, 2010, and the Lock Law went back into effect. Cohen Decl. Ex. 11 (9/27/2010 Notice).

4

22. Argentina made all payments due under the 2010 Exchange Bonds until June 30, 2014 and has purported to make payments since then. Cohen Decl. Ex. 26.

23. Plaintiff did not participate in the exchange offers and continues to own the bonds referenced in the Complaint in this action. Costantini Decl. ¶¶ 4, 8.

24. Since December 2001 and through the date of this statement under Local Rule 56.1, Argentina has not made any payments of principal or interest due to Plaintiff under the Defaulted Bonds. Costantini Decl. ¶ 5.

25. In October 2010, bondholders similar to Plaintiff sought enforcement of the Pari Passu Clause. *NML Capital, Ltd v. The Republic of Argentina*, Nos. 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG), 09 Civ. 1708 (TPG) (S.D.N.Y.); *Aurelius Capital Master, Ltd. and ACP Master, Ltd. v. The Republic of Argentina*, Nos. 09 Civ. 8757 (TPG), 09 Civ. 10620 (TPG); *Aurelius Opportunities Fund II, LLC and Aurelius Capital Master, Ltd. v. The Republic of Argentina*, Nos. 10 Civ. 1602 (TPG), 10 Civ. 3507 (TPG); *Aurelius Capital Master, Ltd. and Aurelius Opportunities Fund II, LLC v. The Republic of Argentina*, Nos. 10 Civ. 3970 (TPG), 10 Civ. 8339 (TPG); *Blue Angel Capital I LLC v. The Republic of Argentina*, Nos. 10 Civ. 4101 (TPG), 10 Civ. 4782 (TPG); *Olifant Fund, Ltd. v. The Republic of Argentina*, No. 10 Civ. 9587 (TPG); *Pablo Alberto Varela, et al. v. The Republic of Argentina*, No. 10 Civ. 5338 (TPG). (the "Pre-Judgment Cases").

26. On December 7, 2011, the Court held that Argentina violated the Pari Passu Clause when it (i) lowered the rank of bonds issued under the 1994 FAA by enacting the Lock Law and Law 26,547, and (ii) when it made payments due under the 2005 and 2010 Exchange

DM1\5404022.1

Bonds (the "Exchange Bonds"), while refusing to satisfy its payment obligations to bondholders similar to Plaintiff. Cohen Decl. Ex. 2 at 5 ¶ 6, 7 (12/7/2011 Order).

27. The Court held that Argentina's Pari Passu payment obligations on the bonds extend to those with pending actions for recovery on their bonds and to those with judgments:

> It is DECLARED, ADJUDGED, and DECREED that the Republic's payment obligations on the bonds include its payment obligations to bondholders who have brought actions to recover on their defaulted bonds, and on judgments entered pursuant to judicial action brought by bondholders.

*Id.* at 4 ¶ 3.

28. On February 23, 2012, the Court ruled in favor of granting equitable relief to remedy Argentina's ongoing violations of the Pari Passu Clause, stating that bondholders similar to Plaintiff were "irreparably harmed by and has no adequate remedy at law for the Republic's ongoing violations of [the Pari Passu Clause], and that the equities and public interest strongly support issuance of equitable relief to prevent the Republic from further violating [the Pari Passu Clause]." Cohen Decl. Ex. 12 at 2 ¶ 1 (2/23/2012 Order).

29. On October 26, 2012, the Second Circuit affirmed the Court's equitable relief order, but remanded for the Court to determine who would be bound by the injunction and how the ratable payment formula would be applied. *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 250–51, *cert. denied*, 134 S. Ct. 2819 (2014) (2d Cir. 2012) ("NML I").

30. Argentina filed a petition for certiorari in the Supreme Court. That petition was denied on October 7, 2013. Cohen Decl. Ex. 13, *Republic of Argentina v. NML Capital, Ltd., et al.*, No. 12-1494 (S. Ct. Oct. 7, 2013).

DM1\5404022.1

31. On November 21, 2012, the Court issued Amended Orders requiring Argentina to specifically perform its Pari Passu obligations (the "Amended February 23 Orders") and enjoining Argentina from seeking to evade its obligations under the Orders. Cohen Decl. Ex. 14 (Amended February 23 Orders).

32. The Amended February 23 Orders require Argentina to make a "Ratable Payment" to bondholders similar to Plaintiff in the Pre-Judgment Cases whenever it pays any amount due under the Exchange Bonds and enjoins Argentina from making any payment on the Exchange Bonds without making a Ratable Payment. *Id.* at 4 ¶ 2 (Amended February 23 Orders).

33. The Amended February 23 Orders expressly prohibit Argentina from taking steps to evade them. *Id.* at 7 ¶ 4.

34. On August 23, 2013, the Second Circuit affirmed the Amended February 23 Orders, but stayed enforcement of the injunction pending Argentina's petition for a writ of certiorari to the Supreme Court. *NML Capital, Ltd. v. Republic of Argentina,* 727 F.3d 230, 248 (2d Cir. 2013) ("NML II").

35. On June 16, 2014, the Supreme Court denied Argentina's petition for a writ of certiorari. Cohen Decl. Ex. 15, *Republic of Argentina v. NML Capital, Ltd., et al.*, No. 13-990 (S. Ct. June 16, 2014).

36. The Second Circuit lifted the stay of the Amended February 23 Orders on June 18, 2014. Cohen Decl. Ex. 16 (6/18/2014 Order).

DM1\5404022.1

37.     Argentina has consistently defied the Court's Orders requiring it to comply with the Pari Passu Clause. *See, e.g.*, Cohen Decl. Ex. 29 (7/3/14 Ltr. to BNY); Ex. 30 (8/6/14 Ltr. to BNY); Ex. 31 (8/6/14 Ltr. to Citibank).

38.     At oral argument before the Second Circuit on July 23, 2012, "counsel for Argentina told the panel that it 'would not voluntarily obey' the district court's injunctions, even if those injunctions were upheld . . . ." *NML II*, 727 F.3d at 238.

39.     On August 26, 2013, Argentine President Cristina Fernández de Kirchner gave a televised address criticizing the rulings of the Court and the Second Circuit, and announcing an evasion plan, pursuant to which Exchange Bondholders would be permitted to exchange their bonds for bonds payable in Argentina, in an attempt to place payments on those bonds outside of the Court's jurisdiction. Cohen Decl. Ex. 17 (Tr. of 8/26/13 Address).

40.     On October 3, 2013, the Court ordered Argentina not to take any steps to evade the Court's orders and held that the evasion scheme announced by President Kirchner was illegal. Cohen Decl. Ex. 19 (10/3/13 Order).

41.     On September 11, 2013, Argentina enacted Law 26,886 purportedly to reopen the bond exchange on the same terms that had been twice rejected by Plaintiff. Cohen Decl. Ex. 18 (Law 26,886).

42.     Law 26,886 prohibits Argentina from offering financial terms and conditions "more favorable" than those in the 2010 Exchange, and prohibits Argentina from "offer[ing] to holders of government-issued debt who have filed court [actions] . . . treatment more favorable than that given to those who have not done so." *Id.*, at arts. 2 & 4 (Law 26,886).

43. Article 7 of Law 26,886 temporarily suspends Articles 2, 3 and 4 of the Lock Law. *Id.*, at art. 7.

44. Argentina made false representations to the Supreme Court and to the Court that it would comply with the Amended February 23 Orders. Cohen Decl. Ex. 20, at 13 (5/27/14 Reply Br.); Ex. 21, at 5:5-10 (5/30/14 Tr.).

45. On June 16, 2014, President Kirchner declared in a televised address that the Republic would not "be subjected to such extortion," referring to the actions of Plaintiff and others, and the Court's Orders. Cohen Decl. Ex. 22 (6/16/14 Statement).

46. On June 17, 2014, Argentine Economy Minister Axel Kicillof announced a plan to evade the Amended February 23 Orders by swapping the Exchange Bonds for new bonds payable in Argentina under Argentine law. Cohen Decl. Ex. 23 (6/17/14 Statement).

47. On June 18, 2014, the Court stated that a "mechanism of the kind proposed by the finance minister would be a violation of the existing procedures and orders established by the Court." Cohen Decl. Ex. 24, at 29:17-20 (6/18/14 Tr.).

48. On June 20, 2014, the Court issued an Order ruling that Minister Kicillof's proposed bond swap was in violation of the Court's Orders. Decl. Ex. 25 (6/20/14 Order).

49. On June 26, 2014, the Republic transferred $832 million to banks that process Exchange Bond payments (including $539 million to BNY, the trustee for some of the Exchange Bonds) in an attempt to pay the Exchange Bondholders. Cohen Decl. Ex. 27 (6/26/14 Bloomberg Article).

50. When Argentina transferred the funds to BNY on June 26, 2014, it did not make a Ratable Payment as required by the Amended February 23 Orders. Costantini Decl. ¶ 5.

DM1\5404022.1

51. On August 6, 2014 the Court held that "the payment by Argentina to BNY . . . was illegal and a violation of the Amended February 23 Orders." Cohen Decl. Ex. 28, at ¶ 1 (8/6/2014 Order).

52. The Court also ordered BNY to hold the funds, and expressly prohibited Argentina from taking any "steps to interfere with BNY's retention" of the funds. *Id.*, at ¶¶ 2-3.

53. BNY has complied with the Court's Orders. Cohen Decl. Ex. 32.

54. Argentina has purported to take away BNY's authorization to operate in Argentina, and taken steps to replace BNY with Buenos Aires-based Nación Fideicomisos, SA, a unit of Argentina's wholly owned bank, Banco de la Nación Argentina. *See* Cohen Decl. Ex. 33 (8/20/14 WSJ); Ex. 34 (8/20/14 Bloomberg); Ex. 35 (Law 26,984); Ex. 36 (9/11/14 Bloomberg); Ex 37 (9/4/14 Bloomberg); Ex. 38 (9/5/14 Ámbito Financiero); Ex. 39 (9/5/14 Clarín).

55. On September 11, 2014, Argentina enacted Law 26,984, which purports to appoint Nación Fideicomisos in place of BNY and to change the payment location of the Exchange Bonds explicitly to evade the "illegitimate and illegal obstruction" created by "judicial orders issued by the Southern District Court of the City of New York." Cohen Decl. Ex. 35.

56. On September 29, 2014, the Court held Argentina in contempt of court. Cohen Decl. Ex. 40 (9/29/2014 Order (Amended 10/3/2014)).

57. On September 30, 2014, Argentina purported to make an interest payment on Exchange Bonds. Cohen Decl. Ex. 41 (10/2/2014 Bloomberg).

58. On January 2, 2015, Argentina purported to make an interest payment on Exchange Bonds. Cohen Decl. Ex. 42 (12/31/2014 El Cronista).

DM1\5404022.1

Duane Morris LLP

By: _____/s/ Anthony J. Costantini_____
Anthony J. Costantini
E-mail:   ajcostantini@duanemorris.com
Suzan Jo (4500468)
E-mail:   sjo@duanemorris.com
Kevin P. Potere
E-mail:   kppotere@duanemorris.com

1540 Broadway
New York, NY 10036-4086
Telephone: +1 212 692 1000
Fax: +1 212 692 1020

Attorneys for Plaintiff

Dated: March 2, 2015