**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ATTESTOR MASTER VALUE FUND LP,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>　　　　　Defendant. | 14 Civ. 05849 (LAP) |
| TRINITY INVESTMENTS LIMITED,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>　　　　　Defendant. | 14 Civ. 10016 (LAP)<br>15 Civ. 1588 (LAP)<br>15 Civ. 2611 (LAP)<br>15 Civ. 5886 (LAP)<br>15 Civ. 9982 (LAP)<br>16 Civ. 1436 (LAP) |
| BYBROOK CAPITAL MASTER FUND LP, and BYBROOK CAPITAL HAZELTON MASTER FUND LP,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>　　　　　Defendant. | 15 Civ. 2369 (LAP)<br>15 Civ. 7367 (LAP)<br>16 Civ. 1192 (LAP)<br>21 Civ. 2060 (LAP) |
| WHITE HAWTHORNE, LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>　　　　　Defendant. | 15 Civ. 4767 (LAP)<br>15 Civ. 9601 (LAP) |

| | |
|---|---|
| WHITE HAWTHORNE, LLC and WHITE HAWTHORNE II, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> THE REPUBLIC OF ARGENTINA, <br><br> Defendant. | 16 Civ. 1042 (LAP) |
| BISON BEE LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE REPUBLIC OF ARGENTINA, <br><br> Defendant. | 18 Civ. 3446 (LAP) |

**JUDGMENT CREDITORS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR TURNOVER**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

      A.      Argentina's Refusal To Honor Its Obligations To Creditors .................................. 2

      B.      Argentina's IPO Of Its YPF Assets ........................................................................ 3

      C.      Argentina's Control Over YPF's Commercial Activity ......................................... 4

THE LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ................................................................................................................................. 6

I.     THE YPF ASSETS ARE NOT IMMUNE FROM EXECUTION UNDER THE FSIA. ................................................................................................................................. 7

      A.      Argentina Has Waived Immunity Of The YPF Assets From Execution. ............... 7

      B.      The YPF Assets Are Used For Commercial Activity In The United States. .......... 8

      C.      The Location Of The YPF Assets In Argentina Does Not Immunize Them From Execution ...................................................................................................... 8

II.    THE COURT SHOULD ORDER THE TURNOVER OF THE YPF ASSETS UNDER NEW YORK LAW. ..................................................................................................... 9

      A.      The YPF Assets Are Subject To Execution Because They Are Assignable or Transferable. ...................................................................................................... 9

      B.      Argentina Is The Proper Garnishee Because It Is In Possession Or Custody Of The YPF Assets. ............................................................................................. 10

      C.      The Court Has The Power To Assist The Judgment Creditors In Reaching The YPF Assets. .................................................................................................. 10

      D.      The Court Should Direct Argentina To Transfer The YPF Assets To The Judgment Creditors Via A Global Custody Account At BNYM In New York. .................................................................................................................... 11

CONCLUSION ............................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Bainbridge Fund Ltd., v. Republic of Argentina*,
    No. 16-cv-8605, Dkt. 189 (S.D.N.Y. June 30, 2025) .....................................1, 4, 6, 8, 9, 10, 11

*Bainbridge Fund Ltd.. v. Republic of Argentina*,
    690 F. Supp. 3d 411 (S.D.N.Y. 2023) ...................................................................................... 9

*Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Com.*,
    990 N.E.2d 114 (N.Y. 2013) ..................................................................................................... 6

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    932 F.3d 126 (3d Cir. 2019) ..................................................................................................... 8

*EM Ltd. v. Republic of Argentina*,
    473 F.3d 463 (2d Cir. 2007) ..................................................................................................... 3

*EM Ltd. v. Republic of Argentina*,
    2009 WL 2568433 (S.D.N.Y. Aug. 18, 2009) .......................................................................... 5

*EM Ltd. v. Republic of Argentina*,
    389 F. App'x 38 (2d. Cir. 2010) ............................................................................................... 5

*Eton Park Capital Mgt., L.P. v. Republic of Argentina,*.
    No. 16-cv-8569, Dkt. 662 (S.D.N.Y. June 30, 2025) ............................................................... 1

*Koehler v. Bank of Berm. Ltd.*,
    12 N.Y.3d 533 (2009) ............................................................................................................... 9

*McKesson, Inc. v. Islamic Republic of Iran*,
    905 F.2d 438 (D.C. Cir. 1990) .................................................................................................. 8

*Petersen Energia Inversora, S.A.U. v. Argentine Republic*,
    895 F.3d 194 (S.D.N.Y. 2018) .............................................................................................. 3, 4

*Petersen Energia Inversora, S.A.U. v. Argentine Republic*,
    2023 WL 2746022 (S.D.N.Y. Mar. 31, 2023) .......................................................................... 3

*Petersen Energia Inversora, S.A.U. v. Argentine Republic*,
    2023 WL 5827596 (S.D.N.Y. Sep. 8, 2023) ............................................................................. 4

*Petersen Energia Inversora S.A.U. v. Republic of Argentina*,
    No. 15-cv-2739, Dkt. 742 (S.D.N.Y. June 30, 2025) ............................................................... 1

## Statutes

28 U.S.C. § 1603 .............................................................................................................................2

28 U.S.C. § 1610 ............................................................................................... 3, 6, 7, 8, 9, 11

N.Y. UCC § 8-112 .................................................................................................... 6, 10, 11

CPLR 5201 ................................................................................................................. 5, 9, 10

CPLR 5225 .................................................................................................................6, 9, 10

## Rules

Fed. R. Civ. P. 69 .........................................................................................................................5

Plaintiffs/Judgment Creditors Attestor Master Value Fund LP, Trinity Investments Limited, Bybrook Capital Master Fund LP, Bybrook Capital Hazelton Master Fund LP, White Hawthorne, LLC, White Hawthorne II, LLC, and Bison Bee LLC (the "**Judgment Creditors**") respectfully submit this memorandum of law in support of their motion for turnover of the Republic of Argentina's ("**Argentina**") interests in YPF S.A. ("**YPF**"):

## PRELIMINARY STATEMENT

The Judgment Creditors seek a "me too" order[1] compelling Argentina to turn over its controlling interests in YPF in partial satisfaction of the judgments entered in the above-captioned actions. Argentina's interests in YPF consist of its 100% ownership of Class A shares of YPF, 51% ownership of Class D shares of YPF, and any related assets currently held by The Bank of New York Mellon ("**BNYM**") in New York representing receipts from the American Depositary Receipt ("**ADR**") program and American Depositary Shares ("**ADSs**") relating to such shares, (collectively the "**YPF Assets**").

The legal issues presented in this motion have been resolved by this Court, including in *Petersen Energia Inversora S.A.U. v. Republic of Argentina*, No. 15-cv-2739, Dkt. 742 (S.D.N.Y. June 30, 2025), *Eton Park Capital Management, L.P. v. Republic of Argentina*, No. 16-cv-8569, Dkt. 662 (S.D.N.Y. June 30, 2025), and *Bainbridge Fund Ltd., v. Republic of Argentina*, No. 16-cv-8605, Dkt. 189 (S.D.N.Y. June 30, 2025). Specifically, the Court has held that the YPF Assets are not immune from execution under the Foreign Sovereign Immunities Act ("**FSIA**"). In reaching that conclusion, the Court found that Argentina indisputably owns the YPF Assets and

---

[1] This motion contains substantially similar arguments to the motions seeking a turnover order filed in *Petersen Energia Inversora S.A.U. v. Republic of Argentina*, No. 15-cv-2739, *Eton Park Capital Management, L.P. v. Republic of Argentina*, No. 16-cv-8569, and *Bainbridge Fund Ltd., v. Republic of Argentina*, No. 16-cv-8605, which will be referred to throughout this motion.

1

has long used them to direct substantial commercial activity in the United States, including Security Exchange Commission ("**SEC**") filings, New York Stock Exchange ("**NYSE**") listings, and capital raising from U.S. investors. And although some of the YPF Assets are held in Argentina (specifically, a portion of the Class D shares and the Class A shares), the Court has confirmed that it has the power under New York law to order Argentina to bring those assets into the United States, which would satisfy the requirement under the FSIA that the property be located "in the United States." Finally, Argentina has waived its immunity in the documents governing the bonds that gave rise to the Judgment Creditors' judgments.

The Judgment Creditors respectfully request the Court to proceed as it has done in similar cases, namely to order Argentina to (1) transfer its Class A and Class D shares of YPF into a global custody account at BNYM in New York, and (2) instruct BNYM to turn over the shares to the Judgment Creditors or their designees, along with any related ADR receipts or ADSs relating to those shares. The Judgment Creditors also respectfully request that the turnover order entered in this case be issued before any further turnover orders in other cases, so as to ensure that the Judgment Creditors are first in line after Petersen Energia Inversora S.A.U., Eton Park Capital Management, L.P., and Bainbridge Fund Ltd.

## BACKGROUND

### A.   Argentina's Refusal To Honor Its Obligations To Creditors

Each of the Judgment Creditors is a beneficial owner of bonds issued by Argentina pursuant to a Fiscal Agency Agreement dated October 19, 1994 (the "**FAA**"). The Judgment Creditors' claims and money judgments total approximately $259,253,614 million when interest through June 30, 2025 is included.

Argentina, a foreign state as defined in 28 U.S.C. § 1603, has waived and pledged not to assert any immunity, including any immunity from post-judgment execution to which its property

2

may otherwise be entitled, to the full extent permitted by law, and has consented to the jurisdiction of this Court. Dkt. No. 79-1 § 22; *accord EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 480 n.18 (2d Cir. 2007) ("[Argentina] indisputably waived its assets' immunity from attachment under 28 U.S.C. §§ 1610(a)(1) and (d)(1).").

Argentina has refused to pay the money it owes under the FAA Bonds and the judgments against it that stem from those bonds. Argentina has also removed most of its property from the United States to evade execution and attachment by its creditors. As the Second Circuit has observed, Argentina "has made many contributions to the law of foreign insolvency through its numerous defaults on its sovereign obligations, as well as through what we might term a diplomacy of default." *EM Ltd.*, 473 F.3d at 466 n.2.

**B.     Argentina's IPO Of Its YPF Assets**

YPF is a petroleum company originally founded in 1922 that was wholly owned and operated by Argentina until 1993. *Petersen Energia Inversora, S.A.U. v. Argentine Republic ("Petersen II")*, 2023 WL 2746022, at *2 (S.D.N.Y. Mar. 31, 2023). In 1993, Argentina decided to privatize YPF "through an initial public offering ('IPO') of nearly 100% of YPF's voting stock." *Petersen Energia Inversora, S.A.U. v. Argentine Republic ("Petersen I")*, 895 F.3d 194, 199 (S.D.N.Y. 2018). To attract investors, Argentina amended YPF's bylaws to protect investors from "(1) hostile takeovers and (2) attempts by Argentina to renationalize the company." *Id.* Among other things, Section 7 of YPF's amended bylaws requires that anyone seeking to acquire 15% or more of YPF's shares—directly or indirectly—must first make a tender offer for all outstanding shares. *Id.* Such offers must comply with the laws and regulations of any country or stock exchange where YPF shares are listed. *Id.*

Argentina "specifically targeted its IPO at United States investors." *Bainbridge*, No. 16-cv-8605, slip op. at 4. It did so through ADRs listed on the NYSE for YPF's Class D shares with

3

BNYM as the depositary bank.  *Id.*  Argentina also registered the YPF Class D shares and the ADRs representing those shares with the SEC. *Id.*  "By all accounts, Argentina's marketing efforts worked … rais[ing] billions of dollars in investment capital with the largest share (more than $1.1 billion in total) coming from the sale of ADRs in the United States on the NYSE." *Petersen I*, 895 F.3d at 200.

Following the IPO, Repsol S.A. ("**Repsol**") became YPF's majority shareholder (owning 51% of its shares). *Id.* at 200, 202.  Argentina retained ownership of YPF's Class A shares, which allowed it to "participate in YPF's corporate governance as a commercial actor." *Id.*  This included, among other things, veto rights over certain third-party acquisitions of YPF shares and the right to elect at least one board member.  *Id.* at 200.

Under Section 6 of the bylaws, only the National Government may hold Class A shares; however, if these shares are transferred by the government to any other party, they automatically convert into Class D shares—unless the transfer is to a Province and authorized by law. *Bainbridge*, No. 16-cv-8605, slip op. at 4.  After the IPO, YPF's shares—through ADRs—were publicly traded on the NYSE and other stock exchanges.  *Petersen I*, 895 F.3d at 200.

C. **Argentina's Control Over YPF's Commercial Activity**

In April 2012, Argentina issued Decree 530/2012, which empowered it to "exercise indirect control over Repsol's" 51% of YPF's Class D shares. *Petersen Energia Inversora, S.A.U. v. Argentine Republic ("Petersen III")*, 2023 WL 5827596, at *1 (S.D.N.Y. Sep. 8, 2023).  As a result, "[f]or all practical purposes . . . Repsol could no longer use its shares to control the company." *Id.* at *2.  Moreover, in May 2012, Argentina's National Congress enacted a law with the purpose of "escap[ing] the obligation to pay the tender offer." *Id.* at *3.

"Since April 2012, the Republic has controlled YPF's major business and financial decisions through its majority share of the company." *Bainbridge*, No. 16-cv-8605, slip op. at 7.

4

Argentina exercises its control by appointing a majority of the members of YPF's Board of Directors and approving initiatives proposed by the Board. *Id.* In recent years, YPF has maintained its presence in U.S. financial markets by: (i) supporting an ADR program for its Class D shares in partnership with BNYM and listing them on the NYSE; and (ii) raising capital through bond offerings in the U.S. debt markets. *Id.* at 7-8.

Argentina's Class A and Class D Shares exist solely in book-entry form and are held in an account with Caja de Valores, S.A. ("**Caja de Valores**"), Argentina's central securities depository. *Id.* at 6. These shares are held directly by Argentina rather than in "street name" (*i.e.*, through a broker or other nominee). *Id.* Because the shares are uncertificated, transfers between owners do not involve any physical exchange. *Id.* Instead, ownership changes are reflected through updates to the depository's records, after which a "Constancia de Acciones" (Proof of Shares) is issued. *Id.* The transferable nature of the shares has been confirmed by President Milei's administration's recent intentions to reprivatize YPF (which would necessarily involve the transfer of shares). *Id.* at 22.

## THE LEGAL STANDARD

Under Federal Rule of Civil Procedure 69(a)(1), a federal district court enforcing a money judgment employs the procedures provided by the law of the state in which the court sits. The New York CPLR, therefore, governs the execution of property in this case. *EM Ltd. v. Republic of Argentina*, 2009 WL 2568433, at *3 (S.D.N.Y. Aug. 18, 2009), *aff'd*, 389 F. App'x 38 (2d. Cir. 2010).

Section 5201 of the CPLR establishes what property is subject to enforcement in New York and who the proper garnishee is. It states that judgments are enforceable only against property that is transferable or assignable. CPLR 5201(b). If the property is evidenced by a negotiable document of title or stock certificate, the holder of that document is the proper garnishee. CPLR 5201(c)(4).

5

When the property is an uncertificated security, the New York UCC governs "the extent to which and the means by which" it can be "reached by garnishment, attachment or other legal process." *Id.* Section 8-112(e) of the New York UCC authorizes a court of competent jurisdiction to provide assistance—by injunction or other means—in accessing the uncertificated security when it cannot be readily accessed by other legal process.

Section 5225 of the CPLR is New York's turnover statute. It establishes the procedure by which courts may direct the payment or transfer of property in satisfaction of an existing judgment, including as applied to sovereign judgment debtors, "where the sovereign owes a commercial debt and is being asked to pay that debt with commercial assets." *Bainbridge*, No. 16-cv-8605, slip op. at 11. If "the judgment debtor is in possession" of the property, the "court shall order the judgment debtor to pay the money . . . to the judgment creditor." CPLR 5225(a). If, instead, the property is not in the judgment debtor's possession, the court may order a third-party garnishee to turn over the property. CPLR 5225(b). The judgment debtor or third-party garnishee must be in "possession or custody" of the property. *See Bainbridge*, No. 16-cv-8605, slip op. at 11 (citing *Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Com.*, 990 N.E.2d 114, 115 (N.Y. 2013)).

In addition to New York law, the FSIA addresses enforcement of a money judgment against a foreign sovereign. For property of a foreign state to be subject to execution (1) the foreign state must have waived its immunity from attachment, (2) it must be used for commercial activity in the United States, and (3) it must be located within the United States. 28 U.S.C. § 1610(a). If the requirements under Section 1610 of the FSIA are satisfied, Argentina cannot assert any sovereign immunity against the execution proceedings and must be treated as would any other debtor.

## ARGUMENT

The Judgment Creditors are entitled to a turnover of YPF Assets under both the FSIA and New York law. As a threshold matter, the YPF assets are not immune from execution under the

FSIA because (1) Argentina has waived its immunity, (2) the YPF assets are used for commercial activity in the United States, and (3) the assets will be located "in the United States" if the Court orders Argentina to transfer the shares to an account in New York, as it should do on the facts of this case.

Moreover, under New York law, the YPF assets are property subject to execution because they are securities that are transferable and assignable. Argentina, in turn, is the proper garnishee because it is in "possession or custody" of the YPF assets. And given that the YPF assets are uncertificated securities that cannot readily be reached by other legal process, this Court has the power to aid the Judgment Creditors in reaching the YPF Assets through injunction or other means.

The Judgment Creditors thus request that the Court order Argentina to: (1) immediately transfer its YPF Assets to a global custody account at BNYM in New York for turnover to Plaintiff; and (2) instruct BNYM to transfer Argentina's ownership interests in those assets to the Judgment Creditors or their designees.

I. **THE YPF ASSETS ARE NOT IMMUNE FROM EXECUTION UNDER THE FSIA.**

　　A. **Argentina Has Waived Immunity Of The YPF Assets From Execution.**

Section 1610(a) of the FSIA provides that a foreign state may waive its immunity from "attachment in aid of execution or from execution either explicitly or by implication." 28 U.S.C. § 1610(a)(1). As this Court and the Second Circuit have found many times, Argentina waived immunity from pre- and post-judgment execution in the documents governing the FAA Bonds. Dkt. No. 79-1 § 22 ("To the extent that [Argentina] . . . shall be entitled . . . to any immunity from . . . attachment prior to judgment, [from] attachment in aid of execution of judgment, from execution of a judgment . . . [Argentina] has irrevocably agreed not to claim and has irrevocably waived such immunity to the fullest extent permitted by the laws.").

7

### B. The YPF Assets Are Used For Commercial Activity In The United States.

"A foreign sovereign's use of its controlling shares to direct a company's commercial activity in the United States satisfies the FSIA requirement that the shares be 'used for a commercial activity in the United States.'" *Bainbridge*, No. 16-cv-8605, slip op. at 19; *see also Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela ("Crystallex II")*, 932 F.3d 126, 151 (3d Cir. 2019); *McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 450 (D.C. Cir. 1990).

Argentina has been YPF's controlling shareholder since 2012. Using that position, it has "controlled YPF's major business and financial decisions through its majority share ownership and generated value for the company through use of the United States' markets." *Bainbridge*, No. 16-cv-8605, slip op. at 19. In particular, Argentina has caused YPF to "sponsor[] an ADR program for its Class D shares with BNYM in New York, list[] [and delist] its shares on the NYSE, register[] its shares with the SEC, and sell[] its debt to United States institutional investors under SEC Rule 144A, all [which] constitute commercial activity in the United States" *Id.* (quotations omitted). "Since April 2012," Argentina has caused "YPF [to sell] more than $2.4 billion in debt just to United States investors." *Id.* at 20.

Based on the foregoing, this Court has already held that Argentina's "use of its controlling shares to direct YPF's commercial activity in the United States is sufficient to establish that the Shares are 'used for a commercial activity in the United States.'" *Id.*

### C. The Location Of The YPF Assets In Argentina Does Not Immunize Them From Execution.

For property to be subject to execution under the FSIA, it must be "in the United States." 28 U.S.C. § 1610(a). Although most of the YPF assets are in Argentina, if the Court were to order them to be transferred to a global custody account in New York, the assets would constitute property "in the United States" for purposes of Section 1610(a) of the FSIA.

8

This Court has repeatedly held that a foreign state's property is not immune from execution under the FSIA "by virtue of being outside the United States." *Bainbridge*, 690 F. Supp. 3d 411, 415 (S.D.N.Y. 2023). Rather, "[t]urnover orders [under New York law] are effective against assets regardless of their location if the Court has personal jurisdiction over the judgment debtor or the third-party garnishee." *Bainbridge,* No. 16-cv-8605, slip op. at 12; *see also Bainbridge*, 690 F. Supp. 3d at 416 ("[T]he FSIA . . . does not supersede CPLR 5225[.]"). Hence, if the property is not otherwise subject to execution immunity (*i.e.*, if it is "used for a commercial activity in the United States" and the sovereign has waived its immunity), this Court may order the property be brought into the United States to satisfy the FSIA's "in the United States" requirement. *Bainbridge*, 690 F. Supp. 3d at 416.

Thus, as explained more fully below (Section II.D), the Court should direct Argentina to transfer the YPF Assets to a global custody account in New York , as it has recently done in similar cases.

## II.     THE COURT SHOULD ORDER THE TURNOVER OF THE YPF ASSETS UNDER NEW YORK LAW.

### A.     The YPF Assets Are Subject To Execution Because They Are Assignable or Transferable.

Money judgments are enforceable "against any property which could be assigned or transferred." CPLR 5201(b). Shares in a company are freely transferable and assignable under New York law. *Bainbridge*, No. 16-cv-8605, slip op. at 9 (citing *Koehler v. Bank of Berm. Ltd.*, 12 N.Y.3d 533, 541 (2009)).

This Court, moreover, has already held that the YPF Assets are "fully transferable, without restrictions" as confirmed by the proof of shares issued by Argentina's Caja de Valores and by President Milei's administration's recent intentions to reprivatize YPF (which would necessarily involve the transfer of shares). *Bainbridge*, No. 16-cv-8605, slip op. at 22.

9

**B.     Argentina Is The Proper Garnishee Because It Is In Possession Or Custody Of The YPF Assets.**

Section 5201(c) of the CPLR outlines who "the proper garnishee is for particular property." If the property is evidenced by a negotiable document of title or stock certificate, the holder of that document is the proper garnishee. CPLR 5201(c)(4).

Argentina is the proper garnishee because it is the holder of the YPF assets. The assets are book-entry shares kept by Caja de Valores, Argentina's central securities deposit. *Bainbridge*, No. 16-cv-8605, slip op. at 6. "The Republic holds the shares at [Caja de Valores] directly, rather than in 'street name' through a broker or other intermediary." *Id.* Hence, as this Court has previously held, "[Argentina] 'holds' or has 'possession or custody' of the Shares for purposes of applying NY CPLR § 5225(a)." *Id.* at 23

**C.     The Court Has The Power To Assist The Judgment Creditors In Reaching The YPF Assets.**

Section 5201(c)(4) of the CPLR provides that Section 8-112 of the New York UCC "govern[s] the extent to which and the means by which any interest in a[n] . . . uncertificated security . . . may be reached by garnishment, attachment or other legal process." The YPF Assets "qualify as uncertificated securities" under the New York UCC because they exist only in book-entry form. *Bainbridge*, No. 16-cv-8605, slip op. at 10.

As a general rule, a creditor may reach a debtor's interest in uncertificated securities only through legal process served on the issuer at its chief executive office in the United States. N.Y. UCC § 8-112(b). But when the debtor's interest in the security "cannot readily be reached by other legal process," Section 8-112(e) of the New York UCC authorizes a court of competent jurisdiction to provide assistance—by injunction or other means—in accessing the uncertificated security.

10

Because the YPF Assets are located in Argentina and "cannot readily be reached by other legal process," Section 8-112(e) of the New York UCC permits the Judgment Creditors to seek this Court's aid to access the YPF Assets.

### D. The Court Should Direct Argentina To Transfer The YPF Assets To The Judgment Creditors Via A Global Custody Account At BNYM In New York.

The Judgment Creditors request that the Court order Argentina to: (i) immediately transfer its Class A and Class D shares of YPF into a global custody account at BNYM in New York; and (ii) instruct BNYM to initiate a transfer of Argentina's ownership interests in the shares to the Judgment Creditors or their designees, along with any related ADR receipts or ADSs relating to those shares.

The Court should adopt this procedural framework, as it has done recently, because it addresses the unique complexities surrounding the location of the YPF Assets in Argentina while remaining consistent with both New York law and the FSIA. The Court's order would comply with New York law because, as discussed above, the Court has the authority to direct Argentina to transfer its extraterritorial assets into the United States

Moreover, as noted above (Section I.C.), the FSIA requires that the YPF Assets be located "in the United States" for them to be subject to execution. 28 U.S.C. § 1610(a). This requirement will be met once Argentina transfers the YPF Assets into a global custody account at BNYM in New York. The global custody account is especially suited for this purpose because its structure allows BNYM to hold the shares as custodian in New York, even though the shares will remain registered in Argentina. Upon transfer, the shares "will have a New York situs" and "will qualify as property 'in the United States[.]'" *Bainbridge*, No. 16-cv-8605, slip op. at 24.

11

Per the second step of the order, Argentina would then be required to direct BNYM to transfer the YPF Assets to the Judgment Creditors or their designees, which would in turn partially satisfy the judgments entered in the above-captioned actions.

## CONCLUSION

For the reasons stated above, the Judgment Creditors respectfully request that this Court (i) issue an order requiring Argentina to transfer its Class A and Class D shares of YPF into a global custody account at BNYM in New York within 14 days from the date of the Court's order; and (ii) instruct BNYM to initiate a transfer of Argentina's ownership interests in the shares to the Judgment Creditors or their designees, along with any related ADR receipts or ADSs relating to those shares, within one business day of the date on which the shares are deposited into the account.

DATED:  July 3, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ Dennis H. Hranitzky

Dennis H. Hranitzky (SDNY Bar # DH7482)
2755 E. Cottonwood Parkway, Suite 430
Salt Lake City, UT 84121
Tel: (801) 515 7300
dennishranitzky@quinnemanuel.com

Kevin S. Reed
Debra O'Gorman
295 Fifth Avenue, 9th Floor
New York, New York 10010
Tel: (212) 849 7000
kevinreed@quinnemanuel.com
debraogorman@quinnemanuel.com

Alex H. Loomis
111 Huntington Ave, Suite 520
Boston, MA 02199
Tel: (617) 712 7100
alexloomis@quinnemanuel.com

*Attorneys for Judgment Creditors*

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I, Dennis H. Hranitzky, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c), that annexed Memorandum of Law was prepared using Microsoft Word and the document contains 3,715 words as calculated by the application's word-counting function, excluding the parts of the Memorandum of Law exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this Third day of July, 2025 in New York, New York.

                                                        /s/ Dennis H. Hranitzky
                                                         *Dennis H. Hranitzky*