UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATTESTOR MASTER VALUE FUND LP,<br><br>          Plaintiff,<br><br>-against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>        Defendant. | No. 14 Civ. 05849 (LAP)<br><br>MEMORANDUM AND ORDER |
| TRINITY INVESTMENT LIMITED,<br><br>          Plaintiff,<br><br>-against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>        Defendant. | No. 14 Civ. 10016 (LAP); 15 Civ. 1588 (LAP); 15 Civ. 2611 (LAP); 15 Civ. 5886 (LAP); 15 Civ. 9982 (LAP); 16 Civ. 1436 (LAP)<br><br>MEMORANDUM AND ORDER |
| BYBROOK CAPITAL MASTER FUND LP, and BYBROOK CAPITAL HAZELTON MASTER FUND LP,<br><br>          Plaintiffs,<br><br>-against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>        Defendant. | No. 15 Civ. 2369 (LAP); 15 Civ. 7367 (LAP); 16 Civ. 1192 (LAP); 21 Civ. 2060 (LAP)<br><br>MEMORANDUM AND ORDER |
| WHITE HAWTHORNE, LLC,<br><br>          Plaintiff,<br><br>-against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>        Defendant. | No. 15 Civ. 4767 (LAP); 15 Civ. 9601 (LAP)<br><br>MEMORANDUM AND ORDER |

```
WHITE HAWTHORNE, LLC and WHITE
HAWTHORNE II, LLC,

                    Plaintiffs,        No. 16 Civ. 1042 (LAP)

-against-                              MEMORANDUM AND ORDER

THE REPUBLIC OF ARGENTINA,

                    Defendant.
```

```
BISON BEE LLC,

                    Plaintiff,         No. 18 Civ. 3446 (LAP)

-against-                              MEMORANDUM AND ORDER

THE REPUBLIC OF ARGENTINA,

                    Defendant.
```

```
BAINBRIDGE FUND LTD.,

                    Plaintiff,         No. 16 Civ. 08605 (LAP)

-against-                              MEMORANDUM AND ORDER

THE REPUBLIC OF ARGENTINA,

                    Defendant.
```

LORETTA A. PRESKA, Senior United States District Judge:[1]

   Before the Court is Plaintiff Bainbridge Fund Ltd's ("Bainbridge") motion to establish its priority as superior to all other judgment creditors based on Attestor Plaintiffs'[2] alleged

---

[1] Unless otherwise stated, citations refer to <u>Attestor Master Value Fund LP v. The Republic of Argentina</u>, No. 14 Civ. 05849.

[2] The Attestor Plaintiffs include Attestor Master Value Fund LP, Trinity Investments Limited, Bybrook Capital Master Fund LP, Bybrook Capital Hazelton Master Fund, LP, White (cont'd)

noncompliance with New York Civil Practice Law and Rules ("CPLR") Rule 6212(c).[3]  Bainbridge requests that the Court (1) invalidate the Court's June 29, 2021 and March 28, 2023 attachment orders in favor of the Attestor Plaintiffs relating to the Republic's reversionary interest in certain collateral held in the custody of the Federal Reserve Bank of New York (the "FRBNY") to secure the Republic's obligations under so-called "Brady Bonds" it had issued in 1993 ("Reversionary Interest")[4] and (2) declare Bainbridge as the priority judgment creditor relating to the Reversionary Interest to enable enforcement of the Court's December 1, 2020 judgment and February 17, 2023 amended attachment order entered in Bainbridge's favor and confirmed by this Court on March 31, 2023. (Bainbridge Mot. at 3.)  Attestor Plaintiffs oppose the motion.[5] For the reasons set forth below, Bainbridge's motion is DENIED.

---

(cont'd) Hawthorne, LLC, White Hawthorne II, LLC, and Bison Bee LLC, which are all listed in the above captions.

[3] (Bainbridge Mot., dated Feb. 28, 2025 [dkt. no. 175]; Bainbridge Mem., dated Feb. 28, 2025 [dkt. no. 176]; Bainbridge Reply, dated Mar 12, 2025 [dkt. no. 185].)

[4] Notably, as of February 6, 2025, the FRBNY held Reversionary Interest in the amounts of $255,466,017.20 and €52,754,220.47. (Dkt. no. 180 at 5.)

[5] (Attestor Pls. Opp'n, dated Mar. 7, 2025 [dkt. no. 183]; Decl. of Kevin S. Reed in Opp'n ("Reed Decl."), dated Mar. 7, 2025 [dkt. no. 184]; see also Attestor Pls. Letter, dated Feb. 5, 2025 [dkt. no. 167].)

I.    **Factual Background**

The Court assumes familiarity with the factual background of these cases.[6]    The Court recounts only the facts necessary to determine the instant motion.

The existence and attachability of the Reversionary Interest were publicly documented in a 2006 published opinion by the Court of Appeals.  Capital Ventures Int'l v. Republic of Argentina, 443 F.3d 214 (2d Cir. 2006).

a. **Attestor Plaintiffs' Actions**[7]

On June 22, 2021, Attestor Plaintiffs filed their initial ex-parte motion for post-judgment and pre-judgment orders attaching the Reversionary Interest.  (Attestor 2d Cir., No. 22-2301, dkt. no. 340 at ECF 13-15.)[8]

On June 29, 2021, the Court held an ex parte hearing. (Attestor 2d Cir., dkt. no. 343 at ECF 245-53.)  During oral argument, Attestor Plaintiffs argued that filing under seal was

---

[6] Attestor Plaintiffs and Bainbridge are beneficial owners of bonds issued by the Republic of Argentina ("the Republic") and brought actions to recover on those bonds following the Republic's default.
[7] At the time the attachment orders were issued as to the Attestor Plaintiffs, some of the plaintiffs were post-judgment creditors, while others were pre-judgment creditors.  For example, on July 7, 2020, the Court entered judgment in favor of Attestor Master Value Fund and Trinity.  (No. 14-cv-05849, dkt. no. 92; No. 14-cv-10016, dkt. no. 87; No. 15-cv-1588, dkt. no. 91; No. 15-cv-2611, dkt. no. 85; No. 16-cv-1436, dkt. no. 71; No. 15-cv-9982, dkt. no. 54; No. 15-cv-5886, dkt. no. 88.)
[8] The Court cites to case 22-2301 as Attestor 2d Cir. throughout this order.

necessary to prevent other creditors from "jump[ing] the line" ahead of them and "until such time as . . . that attachment order was delivered to the marshal and the marshal then delivered it to the FRBNY and created a levy on the reversionary interest [that Plaintiffs sought] to attach."  (Id. at ECF 250-51.)  Attestor Plaintiffs assured the Court that "[f]ollowing that point, once the levy is established, there would be no need, from [Plaintiff's] perspective, to maintain the seal and the documents could become part of the public record."  (Id. at ECF 250.)

Following the hearing, the Court granted Attestor Plaintiffs' motion for attachment of the Republic's Reversionary Interest. ("Attachment Order," Attestor 2d Cir., dkt. no. 353 at ECF 3-16.) The Court additionally ordered that notice of the Attachment Order be withheld from all persons other than Attestor Plaintiffs and the Republic.  (Id. at ECF 15.)  Specifically, all proceedings and filings were to remain temporarily under seal "in order to avoid disclosing [the] proceedings in advance of the levy." (Id.)  That same day, the Court emailed the Attachment Order to Attestor Plaintiffs' counsel stating, "Attached please find the signed order of attachment.  The Order will be filed under seal in the above captioned case (and related cases).  The briefing, exhibits, and declarations submitted in support will also be filed under seal."  (Reed Decl. Ex. 1 at 1.)

On July 9, 2021, the levy was granted when the U.S. Marshals Service served the Attachment Order on the FRBNY and Attestor Plaintiffs served the Attachment Order and related submissions on the Republic. (Reed Decl. Ex. 2.) The following week, the FRBNY provided a garnishee's statement stating that it held Reversionary Interest valued at approximately $270.3 million, which was substantially less than the amount of Attestor Plaintiffs' claims and judgments (which at that time totaled approximately $414 million). (Id. Ex. 3; Id. Ex. 4 at 7.) The FRBNY marked the garnishee's statement as "CONFIDENTIAL," because it included detailed financial information regarding the Republic's accounts at the FRBNY, including account numbers and amounts on deposit. (Id. Ex. 3.)

On July 22, 2021, Attestor Plaintiffs and the Republic jointly requested that the Court "seal all filings, submissions, and papers relating to the June 29, 2021 Attachment Order" to protect "sensitiv[e] . . . financial information and the negotiations described in the papers" from public disclosure. (Attestor 2d Cir., dkt. no. 343 at ECF 255; Reed Decl. Ex. 8.) In support, the parties urged that the requested sealing would facilitate ongoing settlement talks and protect the Republic's confidential financial information. (Reed Decl. Ex. 8 at 4.) The parties also noted that there was limited public interest in disclosure of materials concerning the Attachment Order because the existence and

attachability of the Reversionary Interest was already known to the public. (Id. at 5.)  Additionally, the garnishee's statement provided by the FRBNY made clear that the amount of Attestor Plaintiffs' claims and judgments vastly exceeded the value of the Reversionary Interest, such that no other party would have more than a de minimis interest in seeking to attach the Reversionary Interest. (Id. at 6.)  On July 23, 2021, the Court granted the request. (Reed Decl. Ex. 9.)  Specifically, the Court ordered that filings made in connection with the Attachment Order were to remain under seal "pending further Order of this Court." (Id. at 3.)

On August 22, 2022, the Court granted Attestor Plaintiffs' motion to confirm the Attachment Order (the "Confirmation Order"). (Reed Decl. Ex. 5 at 3.)

On September 21, 2022, the Republic filed its first notice of appeal. (Attestor 2d Cir., dkt. no. 366 at 156.)  The Court details the appeal proceedings below, see infra Section I.C.

While the first appeal was pending, the Republic revealed that an additional €58 million of collateral for a group of Brady Bonds denominated in Deutschmarks was held in FRBNY accounts at Deutsche Bundesbank in Frankfurt, Germany. (Attestor Pls. Opp'n at 4.)  On March 28, 2023, at Attestor Plaintiffs' request, the Court issued an order (1) clarifying that the attached Reversionary Interest extended to the Republic's interest in the collateral

held in FRBNY accounts overseas, and (2) directing the FRBNY to turn over the Reversionary Interest to Attestor Plaintiffs (the "Turnover Order").  (Reed Decl. Ex. 6.)  The Court immediately stayed the Turnover Order pending resolution of the Republic's appeal.  (Id. at 7.)  The Republic's appeal of the Turnover Order was consolidated with its pending appeal of the Attachment Order and Confirmation Order, ("the Attestor Appeals").  Attestor Master Value Fund LP v. Argentina, 113 F.4th 220 (2d Cir. 2024), cert. denied sub nom. Argentina v. Attestor Master Value, 2025 WL 299527 (U.S. Jan. 27, 2025).

### b. Bainbridge's Actions

On December 1, 2020, the Court entered judgment in favor of Bainbridge, against the Republic, for approximately $95 million. (Bainbridge, 16 Civ. 8605, dkt. no. 41.)

On January 31, 2023, the Court granted Bainbridge's ex parte motion for an order of attachment as to the Reversionary Interest. (Id. dkt. no. 71-2.)  On February 17, 2023, the order was entered, whereby Bainbridge successfully attached the Reversionary Interest.[9]  (Id. dkt. no. 71-1.)  On February 27, 2023, Bainbridge

---

[9] At this time, Bybrook, Bybrook Hazelton, White Hawthorne, White Hawthorne II, and Bison Bee were still pre-judgment creditors. (See supra n.7.)  It was not until August 14, 2024 that the Court entered judgment in favor of: Bison Bee (No. 18 Civ. 03446, dkt. no. 65); Bybrook Capital Hazelton Master Fund (No. 15 Civ. 02369, dkt. no. 90.); Bybrook Capital Master Fund (No. 16 Civ. 01192, dkt. no. 79.); White Hawthorne, LLC (No. 15 Civ. 04767, dkt. no. 91.); and White Hawthorne II (No. 16 Civ. 01042.)

filed a notice of the attachment, pursuant to NY CPLR Rule 6212(c). (Id. dkt. no. 71.)    On March 31, 2023, the Court confirmed Bainbridge's attachment.    On May 1, 2023, the Republic appealed, ("the Bainbridge Appeal").    (Id. dkt. no. 91.)

On May 26, 2023, the Republic and Bainbridge entered a stipulation whereby the Bainbridge Appeal would be stayed and held in abeyance pending a decision and an entry of the Court of Appeals' mandate in the Attestor Appeals.    (Bainbridge 2d Cir., No. 23-752, dkt. no. 38 at 3.)[10]    Therein, the parties agreed that Bainbridge would be bound by the resolution of the Attestor Appeals.    (Id. at 4.)    If the Attestor Appeals resulted in an affirmance, as they did, Bainbridge's confirmation order would be affirmed.    (Id.)    On the other hand, if reversal occurred, Bainbridge's confirmation order would be deemed vacated.    (Id.) The Republic has since dismissed the Bainbridge Appeal.

### c. Attestor Plaintiffs' Appeal

On October 5, 2022, the Republic filed a motion to the Court of Appeals seeking leave to file its notice of appeal of the Attachment Order and the Confirmation Order, and ancillary papers, under seal.    (Attestor 2d Cir., dkt. no. 3.)    The Republic asserted that "[d]isclosure of the sealed attachment proceeding records and the Republic's financial information . . . [was] of minimal value

---

[10] The Court cites to case 23-752 as Bainbridge 2d Cir. throughout this order.

to the public" because the Republic "routinely made public
disclosure regarding the attached collateral," specifically
referring to its annual Form 18-K filings. (Id. dkt. no. 336 at
8-9.)  The Republic urged the Court to "maintain the status quo"
established by the lower court whereby "[t]hroughout attachment
proceedings, no papers had been made publicly available and were
exchanged among the parties and the court solely by email." (Id.
at 3.)  On October 13, 2022, Bainbridge moved to intervene to
oppose the motion to seal on the grounds that the Republic's motion
"would prejudice Bainbridge by depriving [it] of material
information about public proceedings  . . . relevant to the
enforcement of its $95+ million judgment." (Id. dkt. no. 19 at
1.)  While the motion to seal was pending, on December 21, 2022,
the Republic filed its opening brief, with an accompanying motion
to seal it. (Id. dkt. no. 127.)  On January 3, 2023, the Republic
clarified, by letter, that its motions did not seek sealing of the
Joint Appendix, as those documents were already sealed pursuant to
the district court's orders. (Id. dkt. no. 141.)

On January 4, 2023, the Court of Appeals granted the
Republic's motions to seal as well as Bainbridge's motion to
intervene. (Id. dkt. no. 145.)  The Court of Appeals indicated
that the circumstances justifying the sealing no longer existed
and requiring that "sealings and redactions made by the parties
. . . be narrowly tailored to achieve the purpose of [the]

sealing[.]"  (Id. at 2.)  <u>Attestor Master Value Fund LP</u>, 113 F.4th at 235 (internal quotation marks omitted).  However, Attestor Plaintiffs did not unseal the attachment records.

The Court of Appeals subsequently granted a motion by Attestor Plaintiffs to seal their opposition brief and a motion by the Republic to seal its reply brief.  (<u>Attestor 2d Cir.</u>, dkt. nos. 202 and 222.)

On August 21, 2024, the Court of Appeals decided the appeal of the Attachment Order, Confirmation Order, and Turnover Order in Attestor Plaintiffs' favor.  <u>Attestor Master Value Fund LP</u>, 113 F.4th at 235.  The Court of Appeals explored the parties' and the district court's justifications for the sealing order.  The Court of Appeals noted that the "district court then granted the parties' joint sealing motion 'because of the sensitivity of the financial information and the [settlement] negotiations.'"  <u>Id.</u>  The Court of Appeals directed the parties to "refile their sealed materials within thirty days, redacting only material containing sensitive financial information."  <u>Id.</u>  The Court of Appeals explained (1) that avoiding interference with settlement talks no longer justified sealing, as settlement talks were no longer ongoing, and (2) that any interest Attestor Plaintiffs had in preserving the secrecy of their effort to attach the assets at issue had waned because the Attachment Order and Turnover Order had already issued. <u>Id.</u>

On September 19, 2024, Attestor Plaintiffs unsealed most, if not all, of the filings, including the Attachment Orders. (Attestor 2d Cir., dkt. nos. 331-369 (Dkt. no. 353 includes the Attachment Orders.)  In addition, on March 7, 2025, Attestor Plaintiffs again filed the relevant attachment orders in connection with its opposition to the priority motion at issue in this order.  (Reed Decl. Ex. 4.)

## II. **Applicable Law**

### a. **Attachment Orders**

Priority among lienholders is typically determined by the chronological sequence of the filing date of the valid attachment orders.  Dontzin Nagy & Fleissig LLP v. HC2 Holdings, Inc., 212 A.D.3d 499 (2023).

NY CPLR Rule 6212 (c)[11] states

> Within ten days after the granting of an order of attachment, the plaintiff shall file it and the affidavit and other papers upon which it was based and the summons and complaint in the action.  Unless the time for filing has been extended, the order shall be invalid if not so filed, except that a person upon whom it is served shall not be liable for acting upon it as if it were valid without knowledge of the invalidity.

N.Y. C.P.L.R. Rule 6212(c).

---

[11] In their February 5, 2025 letter, Attestor Plaintiffs argue that this statute does not apply in federal court.  (Dkt. no. 167.) However, in Attestor Plaintiffs' opposition it appears they have abandoned this argument, and therefore the Court does not address it.

In the absence of timely filing, an order of attachment is invalid.  See § 20:37. Filing, 3 N.Y.Prac., Com. Litig. in New York State Courts § 20:37 (5th ed.) (explaining NY CPLR Rule 6212(c)'s filing as "giv[ing] notice of the attachment to persons interested in the attached property" and that failure to "file . . . in accordance with the prescribed time period" renders the order invalid); see, e.g., Nat'l Sec. Ins. Co. v. Hellenic Lines Ltd., No. 4556/75, 1975 WL 444128 (N.Y. Sup. Ct. 1975), aff'd, 53 A.D.2d 523 (1976) (a delay of even "five months after the granting of the attachment would render the attachment invalid by reason of CPLR 6212(c) which requires a filing within ten days after the attachment."); see also Port Distributing Corp. v. Pflaumer, 880 F. Supp. 204 (S.D.N.Y. 1995).  However, the Court may extend the ten-day filing period before or after the time period has expired, nunc pro tunc, see infra Section II.C.i.  Mulder v. A.S. Goldman & Co., Inc., 703 N.Y.S.2d 678, 681 (N.Y. Sup. Ct. 1999).

The commentary to NY CPLR Rule 6212(c) states that the provision is intended "to provide a public location at which the papers can be examined by anyone who was not served with the papers, such as a person with an interest in the property other than the garnishee or defendant."

### b. Filing Under Seal

Under Federal Rule of Civil Procedure ("FRCP" or "Rule") 5(d)(2)(B), "a paper not filed electronically is filed by

delivering it . . . to a judge who agrees to accept it for filing."
Fed. R. Civ. P. 5(d)(2)(B).  Additionally, NY CPLR Rule 2102(b)
provides that "a paper filed in accordance with the rules of the
chief administrator or any local rule or practice established by
the court shall be deemed filed."  N.Y. C.P.L.R. Rule 2102(b).

Under the Court's Individual Practices Rule G(2), when a party
seeks to file papers under seal, they "must be contemporaneously
submitted to the Court by hand delivery or emailed to chambers
(outside the ECF system) at PreskaNYSDChambers@nysd.uscourts.gov."

### c. Correcting Any Defect

Bainbridge and Attestor Plaintiffs dispute whether federal or
state law applies to Bainbridge's potential relief for Attestor
Plaintiffs' alleged failure to comply with NY CPLR Rule 6212, which
Bainbridge argues invalidates Attestor Plaintiffs' Attachment
Order.  The Court addresses both federal and state law.

#### i. Federal Law

While FRCP 64 provides that "every remedy . . . under the law
of the state where the court is located" is available with respect
to seizures of persons or property, it also prescribes that "a
federal statute governs to the extent it applies."  Fed. R. Civ.
P. 64.

FRCP 60 provides the grounds for relief from a judgment or
order of a federal court.  Fenell v. TLB Kent Co., 865 F.2d 498,
500-01 (2d Cir. 1989) ("The grounds and the procedure for setting

aside a federal judgment are entirely a matter of federal law, on which state law may be disregarded.") (citation omitted) (emphasis added); see also Gabrieli v. Wal-Mart Stores East, LP, 12 Civ. 1755 (ENV) (RLM), 2021 WL 4205174, at *2 (E.D.N.Y. Apr. 12, 2021).

Under FRCP 60(b)(1), a "court may relieve a party . . . from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Relief under FRCP 60(b)(1) must be requested within one year of entry of the judgment or order. Fed. R. Civ. P. 60(c)(1). The Court must "tak[e] account of all relevant circumstances surrounding the party's omission." In re Gen. Motors LLC Ignition Switch Litig., 14 Civ. 7631 (JMF), 2019 WL 3302606, at *3 (S.D.N.Y. Jul. 23, 2019) (citation omitted). While Rule 60(b)(1) can serve to relieve a party of its own "inadvertence, carelessness, and mistake[,]" "failure to follow the clear dictates of a court rule . . . will generally not constitute such excusable neglect." Id. (citations omitted).

Additionally, nunc pro tunc "refers to a court's inherent power to enter an order having retroactive effect." Iouri v. Ashcroft, 464 F.3d 172, 181-82 (2d Cir. 2006) (citation omitted). It constitutes "a far-reaching equitable remedy applied in certain exceptional cases, typically aimed at rectifying any injustice to the parties suffered by them on account of judicial delay." Id. (internal quotation marks and citations omitted).

15

As noted, federal law "governs to the extent it applies."
Fed. R. Civ. P. 64.  Here, the Court is faced with Bainbridge's
motion to vacate Attestor Plaintiffs' Attachment and Confirmation
Orders.  Bainbridge is arguing that it, a plaintiff against the
Republic in a different lawsuit that also seeks to attach to the
Republic's relevant assets, should be granted relief from Attestor
Plaintiffs' Attachment and Confirmation Orders.  Bainbridge argues
that it is Attestor Plaintiffs who must prove "mistake,
inadvertence, surprise, or excusable neglect" for why the
Attachment and Confirmation Orders should <u>not</u> be vacated because
it failed to timely file under NY CPLR Rule 6212.  This is
backwards.  Therefore, although FRCP 60 provides grounds for relief
from an order of the federal court, it is not on point in the
situation at hand.  Thus, the Court will evaluate Bainbridge's
motion under the equitable remedy of <u>nunc pro tunc</u> and relevant
state law.

### ii. State Law

NY CPLR § 2001 establishes a general rule that "[a]t any stage
of an action . . . , the court may permit a mistake, omission,
defect or irregularity . . . to be corrected, upon such terms as
may be just, or, if a substantial right of a party is not
prejudiced, the mistake, omission, defect or irregularity shall be
disregarded. . . ."  N.Y. C.P.L.R. § 2001.  Relief pursuant to NY
CPLR § 2001 is "required" when it would not prejudice a substantial

right of the respondent and is necessary to "ensure that [movants]
suffer no adverse consequences for their technical mistake."
<u>MacLeod v. Cnty. of Nassau</u>, 75 A.D.3d 57, 64 (2d Dep't 2010).

> In the context of deadlines, NY CPLR § 2004 states,
> Except where otherwise expressly prescribed by law, the court
> may extend the time fixed by any statute, rule or order for
> doing any act, upon such terms as may be just and upon good
> cause shown, whether the application for extension is made
> before or after the expiration of the time fixed.

N.Y. C.P.L.R. § 2004.

Specifically, in the context of vacating or modifying an
attachment, NY CPLR § 6223 states that "the court may give the
plaintiff a reasonable opportunity to correct any defect." N.Y.
C.P.L.R. § 6223.

## III. <u>Discussion</u>

Bainbridge argues that Attestor Plaintiffs failed to comply
with the filing requirements of NY CPLR Rule 6212 by sealing
material information from interested parties. Attestor Plaintiffs
argue that they complied with the Rule 6212 requirements and even
if the Court finds that they did not do so, any defect can be
corrected.

### a. **Compliance with NY CPLR Rule 6212**

Attestor Plaintiffs' Attachment Order, briefing, exhibits,
and declarations submitted in support were all filed with the Court
on June 22, 2021, when Attestor Plaintiffs filed its <u>ex parte</u>
motion. (<u>Attestor 2d Cir.</u>, dkt. no. 340 at ECF 13–15.) On June

29, 2021, the Court granted the motion to seal and specifically noted that the materials "will be filed under seal." (Reed Decl. Ex. 1.)  The necessary documents were filed pursuant to federal law, state law, and the Court's Individual Practices with the Court's confirmation, on June 29, 2021, that it would file the Attachment Order and accompanying documents under seal.  Fed. R. Civ. P. 5(d)(2)(B); N.Y. C.P.L.R. Rule 2102(b); LAP Individual Practices Rule G(2).

Bainbridge argues that even if the Court considers Attestor Plaintiffs' actions as "filing" under NY CPLR Rule 6212, the sealed nature of the filing prevented the type of public notice that the statute was designed to ensure.  But, notably, the Rule explicitly gives the Court discretion to extend the filing deadline.  N.Y. C.P.L.R. 6212(c).  The Court's granting of the motion to seal serves as an extension of the deadline to file the required materials publicly under NY CPLR Rule 6212.

Furthermore, Bainbridge argues that Attestor Plaintiffs failed to unseal even though they were aware of the need to do so - when the controversy of the DMK Collateral arose, once the levy was effected,[12] and at the Court of Appeals' direction in both its

---

[12] Attestor Plaintiffs initially requested sealing to prevent other creditors from "jump[ing] the line" and assured the Court that once the levy is established, "there would be no need, from [Plaintiff's] perspective, to maintain the seal and the documents could become part of the public record."  (Attestor 2d Cir., dkt. no. 343 at ECF 250-51.)  However, once the levy was (cont'd)

January 4, 2023 order, (Attestor 2d Cir., dkt. no. 145), and August 21, 2024 order, (Attestor 2d Cir., dkt. no. 321-1 at ECF 25). However, the Court of Appeals' direction to Attestor Plaintiffs and the Republic to narrow the scope of what had previously been sealed appeared in its August 21, 2024 decision, and Attestor Plaintiffs complied on September 19, 2024, which was within the specified timeframe.

Bainbridge also claims that there is no evidence that the proper filings – the Summons, Complaint and "other papers upon which [the attachment order] was based" – under NY CPLR Rule 6212(c), were ever made. (Reply at 2 nn. 1-2.) However, the Court found the Attachment Order and garnishee's statement sufficient to grant the Confirmation Order. (Reed Decl. Ex. 5.) And, even if any of the documents are missing, it is a curable defect. Mulder, 703 N.Y.S.2d at 681-82 (holding that because the requirements of CPLR 6212(c) are "not jurisdictional," the failure to "timely file" the NASD Statement is "curable and not fatal" to an attachment).

---

(cont'd) established, the parties jointly filed a sealing request that the Court, having considered the public interest in disclosure of the materials concerning the Attachment Order, granted on July 23, 2021. (Reed Decl. Ex. 9.) The Court noted that filings made in connection with the Attachment Order were to remain under seal "pending further Order of this Court." (Id.) Bainbridge also notes that at any point after the levy was effected, Attestor Plaintiffs could have filed the necessary papers with redactions. However, redactions were not required by the Court until the Court of Appeals' orders. (Attestor 2d Cir., dkt. nos. 145, 321-1 at 25.)

Accordingly, Attestor Plaintiffs complied with the filing requirements of NY CPLR Rule 6212.

### b. Even if Attestor Plaintiffs Failed to Comply, Bainbridge was Not Prejudiced, and the Defect Could be Corrected

Assuming arguendo that Attestor Plaintiffs failed to file timely pursuant to NY CPLR Rule 6212, Bainbridge was not prejudiced, and thus the Court may cure the defect under state law or by extending the filing deadline to allow them to comply with the statute nunc pro tunc.

### i. Bainbridge was Not Prejudiced

New York law makes clear that courts must apply its procedural rules leniently, especially when no party has suffered any prejudice from a failure to comply. Bainbridge does not claim to have suffered any prejudice whatsoever from Attestor Plaintiffs' purported failure to file the attachment papers timely, nor could it.

First, the attachability of the property had been established by the Court of Appeals in 2006.[13]    Capital Ventures Int'l v.

---

[13] The Republic's 18-K states, "while most attempts to execute the property of the Republic or of alleged alter egos of the Republic have been rejected by the courts, in a few instances plaintiffs seeking payment under Argentina's Untendered Debt succeeded in attaching and restraining assets of the Republic." (Attestor 2d Cir., dkt. no. 347 at ECF 213.)  Attestor Plaintiffs argue that the information disclosed in its 18-K provides the same notice to the public as the requirements under NY CPLR Rule 6212 would.  (See Attestor 2d Cir., dkt. no. 336 at 8-9; id. dkt. no. 347 at ECF 246-47.)  The Court disagrees.  The 18-K makes no mention of what assets in particular have been restrained, the amount of (cont'd)

Republic of Argentina, 443 F.3d 214 (2d Cir. 2006).    Thus,
Bainbridge had the requisite knowledge to pursue attaching the
property and could have taken steps to do so.

Additionally, the amount of Attestor Plaintiffs' claims and
judgments far exceeds the value of the attached property, so even
if Bainbridge had been immediately alerted to Attestor Plaintiffs'
attachment, there would have been nothing for Bainbridge to attach
that Attestor Plaintiffs would not have taken first.    (See Attestor
2d Cir., dkt. no. 336 at 9.)

Moreover, no other creditors, other than Attestor Plaintiffs
and Bainbridge, have attached the property at issue here, so
Bainbridge's January 2023 attachment puts it second in the priority
line, which is exactly where it would have been if it had obtained
its attachment immediately after Attestor Plaintiffs got theirs.

Because Attestor Plaintiffs' position would be no different
if it knew about Bainbridge's Attachment Order four years ago, the
Court finds that Bainbridge was not prejudiced.    See, e.g.,
MacLeod, 75 A.D.3d at 65 (court obligated to disregard plaintiffs'
"technical, nonprejudicial" non-compliance with state procedures
under CPLR 2001); Beltway Capital, LLC v. Gutierrez, 140 A.D.3d

---

(cont'd) assets, or where they are held.  The information contained
therein is vague, at best.  The NY CPLR Rule 6212 requirements do
not stop at mere notice of the attachment itself but rather must
include the basis for the attachment, identification of the
property attached, and the property's relation to the suit.
(Bainbridge Mem. at 16-17.)

998, 999 (2d Dep't 2016) (reversing denial of CPLR 2001 motion where "given the respondents' actual knowledge of the notice of pendency . . . they cannot claim that they would be prejudiced" by an omission); see also Trust v. Kummerfeld, 153 F. App'x 761, 763 (2d Cir. 2005) (failure to strictly comply with filing requirements of CPLR 5225(c) excused under CPLR 2001 because "seeming procedural irregularity" caused no prejudice); Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc., 39 F. Supp. 3d 516, 522 (S.D.N.Y. 2014) (CPLR 2001 invoked to disregard procedural irregularity where "a substantial right of a party [was] not prejudiced"); C=Holdings B.V. v. Asiarim Corp., 12 Civ. 928 (RJS), 2014 WL 13111878, at *2 (S.D.N.Y. Dec. 11, 2014) (failure to seek writ of execution by way of motion as opposed to proceeding under CPLR excused as a "technicality"); N. Mariana Islands v. Millard, 845 F. Supp. 2d 579, 582 (S.D.N.Y. 2012) (any non-compliance with CPLR 5225(b) special proceeding provision would have been deemed permissible given lack of prejudice to complaining party).

### ii. Any Purported Defect Could be Corrected

Not only was Bainbridge not prejudiced by Attestor Plaintiffs' purported untimely filing, it was, if anything, justifiable and inadvertent.

Bainbridge argues that the delay in filing is attributable to no one other than Attestor Plaintiffs and therefore does not warrant a nunc pro tunc order.    (Bainbridge Mem. at 18.)

Bainbridge contends that Plaintiffs' supposed failure to comply with CPLR 6212(c) was "deliberate and purposeful," (Bainbridge Mem. at 12), but it bases that contention primarily on the fact that Attestor Plaintiffs sought judicial permission to seal the attachment papers, which they were entitled to do and which is consistent with NY CPLR 6212(c)'s provision allowing the Court to extend the deadline for publicly filing attachment papers.

Although "the court does not bear responsibility for tracking down the county clerk's file to ensure that the petitioner has timely filed the papers under CPLR 6212," the Court ordered that the filings made in connection with the Attachment Order were to remain under seal "pending further order of this Court." 4A West's McKinney's Forms Civil Practice Law and Rules § 11:6. (Reed Decl. Ex. 9.) Attestor Plaintiffs adhered to the Court's order.

Bainbridge argues that "allowing Attestor Plaintiffs to bypass the statutes' mandatory filing requirements after their years-long noncompliance with the statute would be utterly inappropriate and would eliminate any incentive for parties to comply with the statute's filing requirements in the future." (Bainbridge Mem. at 20.) However, this issue only arises in the context of sealing requests, and the Court must consider these implications before granting those requests.

NY CPLR 6212(c) is at best an administrative requirement to ensure papers are docketed promptly, not a sword with which to

punish parties for obtaining purportedly overbroad sealing orders. Thus, nunc pro tunc relief is warranted to remedy the injustice caused by "judicial delay that alters the priority of liens and judgments . . ." Emerson Elec. Co. v. Asset Mgmt. Assocs. of New York, Inc., No. 16 Civ. 1390 (PKC) (SIL), 2023 WL 4850528, at *16 (E.D.N.Y. July 28, 2023).

**IV.    Conclusion**

For the reasons set forth above, Bainbridge's motion is DENIED. The parties shall confer and inform the Court by letter, no later than July 30, 2025, how they wish to proceed.

The Clerk of the Court is respectfully directed to close dkt. no. 175.

**SO ORDERED.**

Dated:    July 14, 2025
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge